Slip Op. 14-10

## UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————  :
                                                     :
SHENYANG YUANDA ALUMINUM           :
INDUSTRY ENGINEERING CO., LTD.         :
et al.,                                              :
                                                     :
                Plaintiffs,                         :
                                                     :
        v.                                          :
                                                     :
UNITED STATES,                            :        Before: Richard K. Eaton, Judge
                                                     :
                Defendant,                         :        Court No. 12-00420
                                                     :
        and                                        :
                                                     :
WALTERS & WOLF, BAGATELOS           :
ARCHITECTURAL GLASS SYSTEMS,        :
INC., and ARCHITECTURAL GLASS &     :
ALUMINUM CO.,                             :
                                                     :
                Defendant-Intervenors.          :
———————————————————  :

## **OPINION**

[United States Department of Commerce's Final Scope Ruling is sustained.]

Dated: January 30, 2014

*John D. Greenwald* and *Thomas M. Beline*, Cassidy Levy Kent (USA) LLP, of Washington, D.C., argued for plaintiffs. With them on the brief were *James R. Cannon, Jr.*, Cassidy Levy Kent (USA) LLP, of Washington, D.C., and *Kristen S. Smith* and *Mark R. Ludwikowski*, Sandler, Travis & Rosenberg, P.A., of Washington, D.C.

*Tara K. Hogan*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., argued for defendant. With her on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Joanna V. Theiss*, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, D.C.

*David M. Spooner*, Squire Sanders (US) LLP, of Washington, D.C, argued for defendant-intervenors. With him on the brief was *Christine J. Sohar Henter*.

Eaton, Judge: This matter is before the court on plaintiffs Shenyang Yuanda Aluminum Industry Engineering Co., Ltd.'s and Yuanda USA Corp.'s (collectively, "Yuanda"), Jangho Curtain Wall Americas Co., Ltd.'s, Overgaard Ltd.'s, and Bucher Glass, Inc.'s (collectively, "plaintiffs") motion for judgment on the agency record pursuant to USCIT Rule 56.2. *See* Pls.' Rule 56.2 Mot. for J. on the Agency R. (ECF Dkt. No. 23) ("Pls.' Mot."). By their motion, plaintiffs challenge the Department of Commerce's ("Commerce" or the "Department") scope ruling made following the final determinations in Aluminum Extrusions from the People's Republic of China ("PRC"), 76 Fed. Reg. 30,650 (Dep't of Commerce May 26, 2011) (antidumping duty order) ("Antidumping Duty Order"), and Aluminum Extrusions From the PRC, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) (countervailing duty order) ("Countervailing Duty Order") (collectively, the "Orders").[1] *See* Final Scope Ruling on Curtain Wall Units and Other Parts of a Curtain Wall System from the PRC, PD 37 at bar code 3108210-01 (Nov. 30, 2012), ECF Dkt. No. 56-37 (Sept. 18, 2013) ("Final Scope Ruling"). Plaintiffs seek a remand of the Final Scope Ruling for Commerce to reconsider its findings. *See* Pls.' Mot. 2.

Defendant United States opposes plaintiffs' motion and asks that Commerce's Final Scope Ruling be sustained. *See* Def.'s Opp'n to Pls.' Mot. for J. upon the Agency R. 1–2 (ECF Dkt. No. 41) ("Def.'s Br."). Defendant-intervenors, Walters & Wolf, Bagatelos Architectural Glass Systems, Inc., and Architectural Glass & Aluminum Co., collectively referred to as the Curtain Wall Coalition (collectively, the "CWC" or the "CWC companies"), join in opposition to plaintiffs' motion. *See* Def.-Ints.' Resp. Br. in Opp'n to Pls.' Mot. for J. on the Agency R. 1

---

[1]     The operative language in the Orders is identical, and therefore all citations to the Orders will be to the Antidumping Duty Order. *See* Antidumping Duty Order, 76 Fed. Reg. 30,650.

(ECF Dkt. No. 38) ("Def.-Ints.' Br."). The court has jurisdiction pursuant to 28 U.S.C. §§

1581(c), (i) (2006) and 19 U.S.C. §§ 1516a(a)(2)(A)(ii), (B)(vi) (2006).

Because curtain wall units are "parts for" a finished curtain wall, the court's primary

holding is that curtain wall units and other parts of curtain wall systems fall within the scope of

the Orders. *See* Antidumping Duty Order, 76 Fed. Reg. at 30,650. For this reason, and the

others set out below, Commerce's Final Scope Ruling is sustained.


## BACKGROUND

On March 31, 2010, the United States International Trade Commission ("ITC") initiated

an investigation into whether a domestic industry was materially injured or threatened with

material injury by reason of imports of certain aluminum extrusions from the PRC. *See* Certain

Aluminum Extrusions From China, USITC Pub. 4153, Inv. Nos. 701-TA-475, 731-TA-1177, at

1 (June 2010) (Preliminary) ("ITC's Preliminary Determinations"). On May 26, 2011, as a result

of the ITC's investigations, and following its own investigations and resulting determinations of

sales at less than fair value and subsidized imports, the Department issued antidumping and

countervailing duty orders on aluminum extrusions from the PRC. *See* Antidumping Duty

Order, 76 Fed. Reg. 30,650; Countervailing Duty Order, 76 Fed. Reg. 30,653.

On October 11, 2012, defendant-intervenors, the CWC, submitted an amended scope

request to Commerce, pursuant to 19 C.F.R. § 351.225(c) (2012). *See* Am. Scope Req. of the

CWC, PD 24 at bar code 3100845-01 (Oct. 11, 2012), ECF Dkt. No. 56-24 (Sept. 18, 2013)

("Am. Scope Req."). The scope request was limited in nature, and asked Commerce to "issue a

scope ruling confirming that curtain wall units and other parts of curtain wall systems are subject

to the scope of the [Orders]." Am. Scope Req. at 1–2. Commerce commenced an initial scope

investigation and determined that the language of the Orders and the description of the products

in defendant-intervenors' petition were dispositive and that curtain wall units fell within the

scope of the Orders. *See* Final Scope Ruling at 1. Accordingly, Commerce determined that it

was "unnecessary to consider" the secondary criteria set forth in 19 C.F.R. § 351.225(k)(2).

Final Scope Ruling at 8. Further, in its Final Scope Ruling, Commerce found that the CWC

companies qualified as interested parties under section 771(9)(C) of the Tariff Act of 1930, as

amended, "as manufacturers, producers, or wholesalers of a domestic like product, and thus

ha[d] standing to bring the Amended Scope Request." Final Scope Ruling at 2; *see* 19 U.S.C. §

1677(9)(C) (2006) ("Tariff Act").


## STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be

unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19

U.S.C. § 1516a(b)(1)(B)(i) (2006).


## DISCUSSION

### I.   LEGAL FRAMEWORK

Following receipt of an application from an interested party, Commerce's regulations

direct it to undertake an investigation to determine whether a product falls within the scope of a

final antidumping or countervailing duty order. 19 C.F.R. § 351.225(k). Initially, Commerce's

investigation is limited to consideration of "[t]he descriptions of the merchandise contained in

the petition, the initial investigation, and the determinations of the Secretary [of Commerce]

(including prior scope determinations) and the [ITC]." *Id.* § 351.225(k)(1). The use of these

descriptions is circumscribed, however, for "[w]hile the petition, factual findings, legal

conclusions, and preliminary orders can aid in the analysis, they cannot substitute for the

language of the order itself, which remains the 'cornerstone' in any scope determination."

*Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010) (quoting

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002)).  If Commerce's

evaluation of these sources, and the scope language itself, are conclusive in determining whether

the products at issue are subject to the scope of an order, Commerce is required to issue a final

scope ruling.  19 C.F.R. § 351.225(d).

    If these primary criteria are not dispositive and the scope of the order is ambiguous,

Commerce is required to commence a formal scope inquiry in which it examines five secondary

factors[2]: "(i) [t]he physical characteristics of the product; (ii) [t]he expectations of the ultimate

purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the

product is sold; and (v) [t]he manner in which the product is advertised and displayed."  *Id.* §

351.225(k)(2).  Where a scope determination is challenged, the court's objective is to determine

whether the scope of the order "contain[s] language that specifically includes the subject

merchandise or may be reasonably interpreted to include it."  *Duferco Steel*, 296 F.3d at 1089.

## II.   PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

### A.   The Scope of the Orders

    The relevant scope language at issue in the Orders reads as follows:

        Subject aluminum extrusions may be described at the time of importation as
    parts for final finished products that are assembled after importation, including,

---

[2]      These factors are commonly referred to as the *Diversified Products* criteria, referencing the case from which they were first derived.  *Walgreen*, 620 F.3d at 1355; *Diversified Prods. Corp. v. United States*, 6 CIT 155, 162 (1983).  These factors have since been reduced to regulation in 19 C.F.R. § 351.225(k)(2).  *See Walgreen*, 620 F.3d at 1355 n.2 (citation omitted).

> but not limited to, window frames, door frames, solar panels, curtain walls, or
> furniture.  Such parts that otherwise meet the definition of aluminum extrusions
> are included in the scope.  The scope includes the aluminum extrusion
> components that are attached (e.g., by welding or fasteners) to form
> subassemblies, i.e., partially assembled merchandise unless imported as part of
> the finished goods 'kit' defined further below.  The scope does not include the
> non-aluminum extrusion components of subassemblies or subject kits.

Antidumping Duty Order, 76 Fed. Reg. at 30,650–51.  The Orders, however, contain two narrow

exceptions that exclude from their scope

> finished merchandise containing aluminum extrusions as parts that are fully and
> permanently assembled and completed at the time of entry, such as finished
> windows with glass, doors with glass or vinyl, picture frames with glass pane and
> backing material, and solar panels.  The scope also excludes finished goods
> containing aluminum extrusions that are entered unassembled in a "finished goods
> kit."

Antidumping Duty Order, 76 Fed. Reg. at 30,651.

Plaintiffs' primary contention is that the scope language of the Orders explicitly excludes

finished merchandise, and that curtain wall units that are filled in with glass and sealed at the

time of importation, qualify as finished products.  *See* Mem. of P. & A. in Supp. of  Pls.' Mot.

for J. on the Agency R. 17–18 (ECF Dkt. No. 23-1) ("Pls.' Br.").  Plaintiffs argue that "[t]he

scope of the Orders covers aluminum extrusions, not curtain wall units," and that "Commerce

[mistakenly] determined that an aluminum frame fully and permanently in-filled with glass,

sealed and attached to brackets and with holes drilled, ready for installation onto a building is an

aluminum extrusion 'part' for a final finished product, *i.e.*, a building façade assembled after

importation."  Pls.' Br. 17, 18.  Plaintiffs insist, however, that "[f]airly read," the scope excludes

"curtain wall units that (1) are 'fully and permanently' filled in with glass and sealed and,

therefore ready for installation, before importation, (2) can be installed upon the side of the

building with no additional fabrication, and (3) become the 'finished windows with glass' of the

buildings on which they are installed."  Pls.' Br. 19–20.

Curtain walls are a relatively new innovation.  The American Society of Testing and

Materials, describes a curtain wall as "'a nonbearing exterior wall, secured to and supported by

the structural members of the building.'"  Final Scope Ruling at 3 (quoting ASTM DICTIONARY

OF ENGINEERING SCIENCE & TECHNOLOGY 674 (10th ed. 2005)); *see also* AMERICAN HERITAGE

DICTIONARY OF THE ENGLISH LANGUAGE 446 (5th ed. 2011) (defining a curtain wall as "[a]

nonbearing wall, often of glass and steel, fixed to the outside of a building and serving especially

as cladding"); DICTIONARY OF ARCHITECTURE & CONSTRUCTION 289 (4th ed. 2006) ("In a tall

building of **steel-frame construction**, an exterior wall that is non-load-bearing, having no

structural function."); DICTIONARY OF ENGINEERING 140 (2d ed. 2003) ("An external wall that is

not load-bearing.").

Commerce, in its Final Scope Ruling, described a curtain wall as "a building façade[3]

from the roof top to the ground floor that does not carry any building dead loads (i.e., the weight

of all materials of construction incorporated into the building)."  Final Scope Ruling at 3.

Plaintiffs acknowledge that a curtain wall unit falls short of the finished curtain wall that

constitutes the façade of a structure, and that a building's entire exterior wall (the curtain wall) is

composed of numerous interlocked curtain wall units.  *See* Pls.' Br. 6.

Nevertheless, plaintiffs reason that the scope of the Orders only encompasses aluminum

extrusions, and excludes final finished products.  *See* Pls.' Br. 17–18; Antidumping Duty Order,

76 Fed. Reg. at 30,651 ("The scope also excludes finished merchandise containing aluminum

extrusions as parts that are fully and permanently assembled and completed at the time of entry,

such as finished windows with glass . . . .").  Therefore, according to plaintiffs, once the curtain

---

[3]      While a façade is often thought of as the wall constituting the front of a building,
Commerce and the parties use the word to mean any entire exterior wall. *See, e.g.*, Final Scope
Ruling at 3; Pls.' Br. 5–6; Def.-Ints.' Br. 8.

wall unit's aluminum frame is filled in with glass, it is no longer an aluminum extrusion, but

rather, something akin to a finished window with glass, and is thus, excluded from the scope of

the Orders.  *See* Pls.' Br. 17–18.  Plaintiffs argue that "[b]y definition, a window . . . and a

curtain wall unit in which all or a portion of the in-fill is glass [are] precisely [the same thing:] a

transparent opening in a wall to allow the passage of light, framed by the extruded aluminum

parts."  Pls.' Br. 20.  They further contend that "a curtain wall unit that functions as a window is

explicitly outside the scope of the Orders."  Pls.' Br. 20.

Additionally, plaintiffs insist that Commerce should have considered whether plaintiffs'

curtain wall units, as imported, were entitled to the benefits of the "finished goods kit" exception

in the Final Scope Ruling.  Pls.' Br. 21; Antidumping Duty Order, 76 Fed. Reg. at 30,651 ("The

scope also excludes finished goods containing aluminum extrusions that are entered unassembled

in a 'finished goods kit.'").

Having taken plaintiffs' arguments into consideration, the court finds that their

interpretation of the Orders' scope language lacks merit.  The relevant language provides that

"[s]ubject aluminum extrusions may be described at the time of importation as *parts for* final

finished products that are assembled after importation, including, but not limited to . . . *curtain

walls*."  Antidumping Duty Order, 76 Fed. Reg. at 30,650–51 (emphasis added).  All parties

agree that a curtain wall itself is a final finished product that is assembled and completed from

the curtain wall units.  *See* Pls.' Br. 6, 25; Def.-Ints.' Br. 7–9; Corrected Oral Arg. Tr. 7:21–8:12,

26:17–24, 27:11–17, 31:10–32:2, 32:19–33:3, Sept. 25, 2013 (ECF Dkt. No. 63) ("Oral Arg.

Tr.").  As the above-quoted language demonstrates, parts for curtain walls are expressly included

within the scope of the Orders.  In addition, the Orders state that "[t]he scope includes the

aluminum extrusion components that are attached (e.g., by welding or fasteners) to form

subassemblies, i.e., partially assembled merchandise . . . ."  Antidumping Duty Order, 76 Fed.

Reg. at 30,651.  Curtain wall units are assembled into completed curtain walls by, among other

things, fasteners.  *See, e.g.*, Letter from Cassidy Levy Kent (US) LLP to Sec'y of Commerce at

9, PD 12 at bar code 3098432-01 (Sept. 25, 2012), ECF Dkt. No. 56-12 (Sept. 18, 2013) ("In

short, in a stick system, the curtain wall is assembled on-site from extruded aluminum (or steel)

frame components, in-fill (glass or panel), silicon sealant, and various brackets and *fasteners*."

(emphasis added)); Am. Scope Req. at 19 ("Hardware consists generally of *fasteners*,

elastomeric lineal gaskets, anchor assemblies and components, screws, nuts and bolts, steel

embeds, insulation, splices to adjoin adjacent units, and sealants that are used between the frame,

infill materials, and the building structure to construct the curtain wall system and secure it to the

building structure and adjoining sections." (emphasis added)); Decl. of John J.P. D'Amario ¶ 8,

PD 13 at bar code 3098432-02 (Sept. 24, 2012), ECF Dkt. No. 56-13 (Sept. 18, 2013).  Plaintiffs

necessarily concede that "absolutely no one purchases for consumption a single curtain wall

piece or unit."  Pls.' Br. 25 (internal quotation marks omitted).  This is because a number of

curtain wall units are attached to form the completed curtain wall, the final finished product.

Curtain wall units are therefore undeniably components that are fastened together to form a

completed curtain wall.  Thus, they are "parts for," and "subassemblies" for, completed curtain

walls.  Accordingly, curtain wall units fall within the scope of the Orders.  While implicit in

plaintiffs' argument is the idea that the term "parts for" somehow means something smaller or

less manufactured than a curtain wall unit, there is nothing in the "parts for" language that would

suggest this kind of restriction, and the court will not add any.

      Further, plaintiffs' attempts to liken curtain walls to finished windows are unconvincing.

Although "finished windows with glass" are excluded from the scope of the Orders, the scope

language distinguishes between finished windows and curtain walls by identifying them each

individually.  *See* Antidumping Duty Order, 76 Fed. Reg. at 30,650–51 ("Subject aluminum

extrusions may be described at the time of importation as *parts for final finished products* that

are assembled after importation, including, but not limited to, *window frames*, door frames, solar

panels, *curtain walls*, or furniture." (emphasis added)).  Thus, the "parts for" portion of the scope

language expressly includes parts for window frames and parts for curtain walls.  This is not the

case, however, with respect to the "finished merchandise" exclusionary language.  *See*

Antidumping Duty Order, 76 Fed. Reg. at 30,650–51 ("The scope also *excludes* finished

merchandise containing aluminum extrusions as parts that are fully and permanently assembled

and completed at the time of entry, such as finished windows with glass, doors with glass or

vinyl, picture frames with glass pane and backing material, and solar panels." (emphasis added)).

In accordance with this language, specifically excluded from the Orders, as completed products,

are finished windows with glass.  There is no similar exclusion for curtain wall parts (*e.g.*,

curtain wall units).  That is, in the finished products portion of the scope language, "finished

windows with glass" are specifically listed, while any mention of curtain walls is notably absent.

Thus, it is apparent that the Orders separately and intentionally distinguish windows from curtain

wall units, and that the "finished merchandise" exception does not encompass curtain wall units.

Moreover, the specific exclusion of in-filled windows and door frames from the scope of

the Orders, while parts for window frames and door frames are expressly included, demonstrates

that the determinative factor for exclusion under the "finished merchandise" provision is not

whether a product is in-filled with glass or vinyl.  Rather, what is significant is whether the

product itself, once in-filled, is a stand-alone completed and finished product.  Thus, each

enumerated item of finished merchandise in the Orders is a complete product upon entry.  For

example, a finished window needs nothing more to be a completed product, purchased individually for consumption.  The same is true of a finished door or picture frame, other goods explicitly excluded from the Orders' scope.  A user can purchase one of these items and put it to use without buying additional identical merchandise.

On the other hand, multiple curtain wall units are designed to be attached together to form a completed curtain wall.  An individual curtain wall unit, on its own, has no consumptive or practical use because multiple units are required to form the wall of a building.  Therefore, a curtain wall unit's sole function is to serve as a part for a much larger, more comprehensive system: a curtain wall.  All of this being the case, it is clear that curtain wall units are not finished merchandise but, rather, are parts for curtain walls.

In addition to claiming that the plain language of the Orders excludes curtain wall units from their scope, plaintiffs assert that their curtain wall units were not intended to fall within the scope of the Orders.  As evidence for this conclusion, plaintiffs note that neither Commerce nor the ITC initiated a comprehensive investigation involving the curtain wall industry during their material injury dumping or subsidy investigations, nor did the ITC make an affirmative material injury finding specifically regarding curtain wall units.  *See* Pls.' Br. 15.  Plaintiffs, however, are unable to point to, and the court is unaware of, any statute or regulation that makes an individual product's inclusion within the scope of an order contingent upon the initiation by Commerce or the ITC of a specific investigation regarding that product.  *See cf.* 19 C.F.R. § 351.225.

Furthermore, although curtain wall units were not the subject of an individualized investigation, it is clear that they were intended to be within the scope of the Orders from the investigation phase.  The curtain wall language has been included in the scope of these investigations since the initial petition, seeking the imposition of antidumping and countervailing

duties, was filed in March 2010.  *See* Petition for the Imposition of Antidumping and

Countervailing Duties Against Certain Aluminum Extrusions from the PRC (Volume I) at 4

(Mar. 31, 2010) ("Petition") ("Aluminum extrusions may also be described as parts for products

that are assembled or otherwise further processed after importation, including, but not limited to,

. . . curtain walls . . . .").  Thereafter, the curtain wall language was included in Commerce's

notices of initiation in April 2010 and the ITC's Preliminary Determinations in June 2010.  *See*

Aluminum Extrusions from the PRC, 75 Fed. Reg. 22,109, 22,114 (Dep't of Commerce Apr. 27,

2010) (initiation of antidumping duty investigation) ("Subject aluminum extrusions may be

described at the time of importation as parts for final finished products that are assembled after

importation, including, but not limited to, . . . curtain walls . . . ."); Aluminum Extrusions from

the PRC, 75 Fed. Reg. 22,114, 22,118 (Dep't of Commerce Apr. 27, 2010) (initiation of

countervailing duty investigation) ("Subject aluminum extrusions may be described at the time

of importation as parts for final finished products that are assembled after importation, including,

but not limited to, . . . curtain walls . . . .") (collectively, "Notices of Initiation").

Finally, early on in response to a product exclusion request made by plaintiff Yuanda in

May of 2010, Commerce made a preliminary determination that the company's curtain wall units

and component parts fell within the ambit of the Orders.  *See* Preliminary Determinations Mem.:

Comments on the Scope of the Investigations at 4, 11, PD 41 at bar code 3116929-01 (Oct. 27,

2010), ECF Dkt. No. 56-41 (Sept. 18, 2013) ("Investigations Mem.") ("The language of the

scope of these investigations as articulated in the Petition and the Notices of Initiation explicitly

states that curtain walls assembled after importation are within the scope.").  All of the foregoing

being the case, it is clear that "curtain wall units" are "parts for" curtain walls, and are

reasonably included in the scope of the Orders by the scope's unambiguous language.

As to the "finished goods kit" exception,[4] plaintiffs further contend that their curtain wall

units, as imported, qualify for the exemption found in the Orders, and that "Commerce's refusal

to address the issue [in its Final Scope Ruling] renders [the Department's] determination

unsupported by substantial evidence."  Reply Br. of Consolidated Pls. 17 (ECF Dkt. No. 42)

(internal quotation marks omitted).  Plaintiffs posit that, even if their curtain wall units are found

to be "subassemblies" that constitute parts for curtain walls, and are thus, covered by the scope

language, that their product should have been excluded from the Orders' coverage under this

exception.  *See* Pls.' Br. 22–24.  The "finished goods kit" exception excludes from the Orders'

reach "partially assembled merchandise . . . packaged [as a] combination of parts that contains, at

the time of importation, all of the necessary parts to fully assemble a final finished good."

Antidumping Duty Order, 76 Fed. Reg. at 30,651.

The Department contends that it did not consider whether plaintiffs' curtain wall units

qualified for the "finished goods kit" exception because "the CWC's Amended Scope Request

d[id] not seek a scope ruling on complete curtain wall units, but rather 'parts of curtain walls.'"

Final Scope Ruling at 9 (quoting Am. Scope Req. at 13).  In its Amended Scope Request, the

CWC sought a ruling confirming that "*curtain wall units and other parts* of curtain walls are

explicitly covered by the scope of the [O]rders."  Am. Scope Req. at 13 (emphasis added).  Thus,

Commerce found the CWC's request to be restricted to a confirmation, based on the explicit

---

[4]        The Orders describe a "finished goods kit" as follows:
A finished goods kit is understood to mean a packaged combination of parts that
contains, at the time of importation, all of the necessary parts to fully assemble a
final finished good and requires no further finishing or fabrication, such as cutting
or punching, and is assembled "as is" into a finished product.  An imported
product will not be considered a "finished goods kit" and therefore excluded from
the scope of the investigation merely by including fasteners such as screws, bolts,
etc. in the packaging with an aluminum extrusion product.
Antidumping Duty Order, 76 Fed. Reg. at 30,651.

language of the Orders, that curtain wall units were "parts for" curtain walls.  Therefore,

Commerce determined that the request did not ask for an examination of whether particular

entries would qualify for the "finished goods kit" exception at the time that they crossed the

border.

      For defendant and defendant-intervenors, plaintiffs' attempts to expand the request to

include exceptions to the scope language simply extended too far beyond the confirmation that

the CWC sought.  Thus, the CWC asserts that the Department properly declined to consider the

"finished goods kit" exception because it "properly indicated that the scope request d[id] not

seek a scope ruling on a particular 'curtain wall kit,' but instead s[ought] a ruling on 'parts of

curtain walls.'"[5]  Def.-Ints.' Br. 33 (quoting Final Scope Ruling at 9).

      The court finds that Commerce properly confined its inquiries to the request made by the

CWC and was not required to make the entry by entry examination that plaintiffs propose.  That

is, an inquiry as to whether a particular entry, or even product, would qualify for an exception to

the scope language simply goes far beyond the CWC's request.  The CWC's request was limited

to seeking a determination as to whether curtain wall units were "parts for" curtain walls, based

on the language of the Orders.  This is clear from the use of the words "and *other* parts for" in

---

[5]      Defendant-intervenors further contend that "Commerce [had] already addressed Yuanda's unitized curtain wall 'kits', which include 'its unitized curtain wall product and the product[']s assorted parts' during the investigation and found [that] they did not qualify for the exclusion." Def.-Ints.' Br. 33 (citing Investigations Mem. at 4, 11–12).  Commerce made a preliminary finding in 2010, in response to a request by plaintiff Yuanda, that curtain wall units and assorted curtain wall parts did not qualify for the "finished goods kit" exception, and were subject to the Orders.  Investigations Mem. at 4, 11–12.  Moreover, in its Investigations Memo, Commerce noted that Yuanda "ha[d] in fact stipulated that its components d[id] not enter as complete kits as defined by the scope of these investigations."  Investigations Mem. at 11.  It is apparent, however, that this finding was not made in the context of the consideration of the Amended Scope Request, and was made only with respect to plaintiff Yuanda's product.  Further, while Yuanda may have stipulated that "its components d[id] not enter as complete kits as defined by the scope of these investigations," it does not appear that any of the other plaintiffs in this proceeding have done so.  Investigations Mem. at 11.

the CWC's Amended Scope Request.  Am. Scope Req. 11, 13 (emphasis added) (titling its

Amended Scope Request as "Amended Scope Request of [the CWC] Regarding the Inclusion of

Curtain Wall Units and *Other* Parts of Curtain Wall Systems in the Scope of the Orders."

(emphasis added)).  The CWC sought a ruling on what products were covered by the Orders, not

whether specific companies' merchandise could be excluded from them.

        If plaintiffs wished treatment for their specific products under the "finished goods kit"

exception, their route was to file a petition of their own seeking the benefit of the exclusion with

respect to their curtain wall units.  Indeed, as represented by plaintiffs at oral argument, they

appear to have already done so.  *See* Oral Arg. Tr. 39:21–40:14 ("THE COURT [(addressing

plaintiffs' counsel):] Is it Commerce's position [that] if you want to find [out whether plaintiffs'

products qualify for the finished goods kit exception,] you have to bring a [separate] scope ruling

[of your own?  PLAINTIFF'S COUNSEL]: It seems to be that way and in fact in all candor to

this Court we have brought a separate ruling that followed on with this because there is some

confusion in the trade as to what this actually applies to . . . .").  Thus, Commerce did not err in

restricting itself to the issue presented by the CWC's request and leaving the issue presented by

plaintiffs for another day.


        **B.      Standing**

        Plaintiffs next contend that Commerce should have refrained from initiating its inquiry

resulting in the Final Scope Ruling because defendant-intervenors' product was not within the

scope of the Orders, and therefore they lacked standing to submit a scope request.  *See* Pls.' Br.

13–17.  The Tariff Act confers standing upon "interested part[ies]," including "manufacturer[s],

producer[s], or wholesaler[s] in the United States of a domestic like product."  19 U.S.C. §

1677(9)(C).  In making their claim, plaintiffs assert that the CWC companies lack standing

because they are domestic producers of curtain wall units and curtain wall systems, products that

are not subject to the Orders.  *See* Pls.' Br. 13–15.  In other words, plaintiffs' standing argument

is a variation of their argument that their curtain wall units are finished products and thus not

subject to the Orders.

Commerce's regulations permit the submission of applications regarding "whether a

particular product is within the scope of an order or a suspended investigation" by "[a]ny

interested party."  19 C.F.R. § 351.225(c)(1).  The Tariff Act defines an "interested party" in

relevant part as

> (C) a manufacturer, producer, or wholesaler in the United States of a domestic
> like product, . . . (E) a trade or business association a majority of whose members
> manufacture, produce, or wholesale a domestic like product in the United States,
> [and] (F) an association, a majority of whose members is composed of interested
> parties . . . with respect to a domestic like product.

19 U.S.C. §§ 1677(9)(C), (E)–(F).  Although "manufacturer, producer, or wholesaler" are not

among the terms further defined in the statute, Congress contemplated "a liberal construction" of

the Tariff Act's standing requirements, intending that those requirements "be administered to

provide an opportunity for relief for an adversely affected industry and to prohibit petitions filed

by persons with no stake in the result of the investigation."  *Brother Indus. (USA), Inc. v. United*

*States*, 16 CIT 789, 793–94 (1992); S. REP. NO. 96-249, at 47 (1979), *reprinted in* 1979

U.S.C.C.A.N. 381, 433.

The Tariff Act further defines a "domestic like product" as "a product which is like, or in

the absence of like, most similar in characteristics and uses with, the article subject to . . .

investigation."  19 U.S.C. § 1677(10).  Therefore, "so long as [a party] manufactures or produces

any one of the . . . like products . . . it is an interested party." *Brother Indus., Ltd. v. United States*, 16 CIT 1106, 1108 (1992).

Since the court finds that defendant-intervenors' products are indeed covered by the Orders, there is no merit to plaintiffs' argument.  That is, because defendant-intervenors produce and manufacture "aluminum extrusions for the production of curtain wall units and parts of curtain wall systems," products that the court finds fall within the ambit of the Orders, defendant-intervenors are interested parties, and thus have standing.  Company Certifications at 6–8, PD 24 at bar code 3100845-01 (Oct. 11, 2012), ECF Dkt. No. 56-24 (Sept. 18, 2013).

### C.      Commerce's Instructions to Customs

Plaintiffs' final challenge is to Commerce's instructions to U.S. Customs and Border Protection ("Customs") which stated that the Department has "found that curtain wall units and other parts and components of curtain wall systems are within the scope of the order[s]" and ordered Customs to "[c]ontinue to suspend liquidation of entries of aluminum extrusions from the PRC, including curtain wall units and other parts and components of curtain walls . . . ." Antidumping Duty Liquidation Instructions Issued Jan. 3, 2013 at 184, 185 (Jan. 3, 2013), Tab 11, Public App. for Pls.' Mem. of P. & A., at 1, 2 at bar code 3116056-01 (ECF Dkt. No. 27-1); Countervailing Duty Liquidation Instructions Issued Jan. 3, 2013 at 1, 2, PD 40 at bar code 3116057-01 (Jan. 3, 2013), ECF Dkt. No. 56-40 (Sept. 18, 2013) ("Countervailing Duty Liquidation Instructions Issued Jan. 3, 2013") (collectively, "Final Scope Ruling Instructions to Customs").[6]  Plaintiffs assert that (1) the instructions were inconsistent with Commerce's

---

[6]      The operative language in Commerce's Final Scope Ruling Instructions to

(footnote continued)

conclusions in its Final Scope Ruling, and "Commerce [consequently] instructed Customs to

collect duties on a product which Commerce did not address in its [Final] Scope Ruling," and (2)

"the retroactive application of suspension of liquidation [was] in contravention of Commerce's

regulations and this Court's precedent when [p]laintiffs' entries were not subject to suspension of

liquidation previously."  Pls.' Br. 3, 30.  Because the court finds that the curtain wall units are, in

fact, subject merchandise that falls within the Orders' scope, and that liquidation of plaintiffs'

curtain wall units has been suspended since the publication of the preliminary determinations

that preceded the issuance of the Orders, these arguments must both fail.

First, there are no inconsistencies between the language of Commerce's instructions and

its Final Scope Ruling.  To the contrary, the language included within the instructions and that

derived from the Final Scope Ruling are virtually identical.  In its Amended Scope Request, the

CWC asked Commerce to "issue a scope ruling *confirming* that curtain wall units and other parts

of curtain wall systems [were] subject to the scope of the [Orders]."  Am. Scope Req. at 1–2

(emphasis added).  Commerce's Final Scope Ruling confirmed that "the products described in

[the] CWC's Amended Scope Request are within the scope of the Orders."  Final Scope Ruling

at 10.  The Department's instructions to Customs state that "Commerce found that curtain wall

units and other parts and components of curtain wall systems are within the scope of the

order[s]."  Countervailing Duty Liquidation Instructions Issued Jan. 3, 2013 at 1.  As noted, this

language has remained consistent since publication of the Notices of Initiation in April 2010.

*See* Aluminum Extrusions from the PRC, 75 Fed. Reg. at 22,114 ("Subject aluminum extrusions

may be described at the time of importation as parts for final finished products that are

---

Customs is identical, and therefore all citations to the Final Scope Ruling Instructions will be to
the Countervailing Duty Liquidation Instructions Issued Jan. 3, 2013.  *See* Countervailing Duty
Liquidation Instructions Issued Jan. 3, 2013.

assembled after importation, including, but not limited to, . . . curtain walls . . . ."); Aluminum

Extrusions from the PRC, 75 Fed. Reg. at 22,118 ("Subject aluminum extrusions may be

described at the time of importation as parts for final finished products that are assembled after

importation, including, but not limited to, . . . curtain walls . . . ."). The instructions following

Commerce's Final Scope Ruling directed Customs to "[c]*ontine to suspend* liquidation of

entries of aluminum extrusions from the PRC, including curtain wall units and other parts and

components of curtain walls . . . ." Countervailing Duty Liquidation Instructions Issued Jan. 3,

2013 at 2 (emphasis added). Thus, Commerce's instructions were consistent with its Final Scope

Ruling and with the language used since the beginning of these proceedings.

     As to plaintiffs' contention that Commerce's instructions to continue to suspend

liquidation and collect cash deposits on entries of subject merchandise were *ultra vires*, the court

is not convinced. *See* Pls.' Br. 31–32. Plaintiffs' argument that the Department's instructions

were invalid is premised on *AMS Associates, Inc. v. United States*, where Commerce's

instructions to Customs were found to be *ultra vires*. *AMS Assocs., Inc. v. United States*, 36 CIT

__, __, 881 F. Supp. 2d 1374, 1382 (2012), *aff'd*, 2013-1208, 2013 WL 6511398 (Fed. Cir. Dec.

13, 2013). In *AMS*, Commerce issued clarification instructions that interpreted the scope of an

existing antidumping duty order to cover new products and then retroactively suspended

liquidation of these products. *See AMS*, 36 CIT at __, 881 F. Supp. 2d at 1377. *AMS* is

inapplicable to this case because, here, the instructions added no new products to the scope, and

because liquidation of plaintiffs' curtain wall units has been suspended since publication of the

preliminary determinations. In these proceedings, the Final Scope Ruling merely confirmed

what had previously been the case.

Where, as here, a scope ruling confirms that a product is, and has been, the subject of an

order, the Department has not acted beyond its authority by continuing the suspension of

liquidation of the product.  Thus, this case presents precisely the situation described by the

Federal Circuit in *AMS*, as one where Commerce would act within its powers by issuing

instructions suspending liquidation:

> Commerce does not have to initiate a formal scope proceeding under 19 C.F.R. §
> 351.225 when it wishes to issue a ruling that does not clarify the scope of an
> unambiguous original order.  Commerce must only follow the procedures outlined
> in § 351.225[(k)(2) (the *Diversified Products* criteria)] when it wishes to clarify
> an order that is unclear.  To hold otherwise would permit importers to potentially
> avoid paying antidumping duties on past imports by asserting unmeritorious
> claims that their products fall outside the scope of the original order.  Importers
> cannot circumvent antidumping orders by contending that their products are
> outside the scope of existing orders when such orders are clear as to their scope.
> Our precedent evinces this understanding.  We have not required Commerce to
> initiate a formal scope inquiry when the meaning and scope of an existing
> antidumping order is clear.

*AMS Assocs., Inc. v. United States*, __ F.3d __, __, 2013 WL 6511398, at *5 (Fed. Cir. Dec. 13,

2013) (citing *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1378–79 (Fed.

Cir. 2003)).  *AMS* involved a situation where "Commerce [was found to have] erred in failing to

conduct a formal scope inquiry . . . because the scope of the original antidumping order was

unclear."  *AMS*, __ F.3d at __, 2013 WL 6511398, at *6.  Here, the scope language of the

antidumping and countervailing duty orders on aluminum extrusions from the PRC presents no

similar problems of ambiguity with respect to its coverage of plaintiffs' curtain wall units.

Therefore, the holding in *AMS* does not affect the outcome of the present case.

In addition, liquidation of parts for curtain walls has been suspended since publication of

the preliminary determinations for the countervailing duty order on September 7, 2010, and

November 12, 2010 for the antidumping duty order.[7]  *See* Aluminum Extrusions From the PRC,

75 Fed. Reg. 54,302, 54,321 (Dep't of Commerce Sept. 7, 2010) (preliminary affirmative

countervailing duty determination); Aluminum Extrusions From the PRC, 75 Fed. Reg. 69,403,

69,415 (Dep't of Commerce Nov. 12, 2010) (notice of preliminary determination of sales at less

than fair value, and preliminary determination of targeted dumping).  Further, Commerce's Final

Scope Ruling neither added nor subtracted products from the scope of these Orders.  *Compare*

Countervailing Duty Liquidation Instructions Issued June 2, 2011 at 2, 4 (June 2, 2011)

("Subject aluminum extrusions may be described at the time of importation as parts for final

finished products that are assembled after importation, including, but not limited to, . . . curtain

walls . . . . Such parts that otherwise meet the definition of aluminum extrusions are included in

the scope. . . . For imports of aluminum extrusions from the [PRC, Customs] shall resume

---

[7]      Pursuant to regulation, Commerce's "instructions issued pursuant to an affirmative preliminary determination may not remain in effect for more than four months except [in an antidumping duty investigation,] where exporters representing a significant proportion of exports of the subject merchandise request the Department to extend that four-month period to no more than six months."  Antidumping Duty Order, 76 Fed. Reg. at 30,652 (citing 19 U.S.C. § 1673b(d)(3) (2006)); *see* 19 U.S.C. § 1673b(d)(3); 19 U.S.C. § 1671b(d)(3) (2006).

In the antidumping duty investigation, the preliminary determination was published on November 12, 2010, and the four-month period was extended.  Antidumping Duty Order, 76 Fed. Reg. at 30,652.  Thus, the six-month period beginning on the date of publication of the preliminary determination concluded on May 11, 2011.  Antidumping Duty Order, 76 Fed. Reg. at 30,652.  In accordance with 19 U.S.C. § 1673b(d)(3), Commerce instructed Customs to terminate the suspension of liquidation and to liquidate all entries of aluminum extrusions from the PRC entered, or withdrawn from warehouse, for consumption after May 11, 2011 (the date that the six-month period expired), and through the day preceding the date of publication of the ITC's final injury determination in the Federal Register, at which time suspension of liquidation would resume.  Antidumping Duty Order, 76 Fed. Reg. at 30,652 (citing 19 U.S.C. § 1673b(d)(3)).

In the countervailing duty investigation, the Department published its preliminary determination on September 7, 2010, and instructed Customs to suspend liquidation of all entries of subject merchandise entered or withdrawn from warehouse, for consumption, on or after that date.  Countervailing Duty Order, 76 Fed. Reg. at 30,654.  In accordance with 19 U.S.C. § 1671b(d)(3), the Department terminated suspension of liquidation effective January 6, 2011, after the four-month provisional remedy expired.  Countervailing Duty Order, 76 Fed. Reg. at 30,655 (citing 19 U.S.C. § 1671b(d)(3)).

suspension of liquidation of entries of subject merchandise entered, or withdrawn from warehouse, for consumption on or after [May 19, 2011].”), *and* Antidumping Duty Liquidation Instructions Issued June 22, 2011 at 2, 4 (June 22, 2011) (“Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, . . . curtain walls . . . . Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. . . . For imports of aluminum extrusions from the [PRC, Customs] shall resume suspension of liquidation of entries of subject merchandise entered, or withdrawn from warehouse, for consumption on or after [May 19, 2011].”), *with* Countervailing Duty Liquidation Instructions Issued Jan. 3, 2013 at 1, 2 (“Because the language of the scope of the Order[s] specifically provides that subject aluminum extrusions may be described at the time of importation as parts for final products [including curtain walls] that are assembled after importation[,] . . . [c]ontinue to suspend liquidation of entries of aluminum extrusions from the PRC, including curtain wall units and other parts and components of curtain walls, subject to the . . . Order[s] on aluminum extrusions from the PRC . . . .” (alteration in original)).  Therefore, Commerce did not err in the issuance of its instructions to Customs.

## CONCLUSION

Accordingly, because parts for curtain walls are specifically and unambiguously provided for in the Orders, the court finds that Commerce reasonably determined that curtain wall units are included in the scope of the Orders.  Additionally, because that conclusion was reasonable, the court also finds that the primary criteria set forth in 19 C.F.R. § 351.225(k)(1) were dispositive, and that there was no need for Commerce to consider the secondary (k)(2) factors. *See* 19 C.F.R. §§ 351.225(k)(1), (2).

Based on the foregoing, it is hereby

ORDERED that the Department of Commerce's Final Scope Ruling is SUSTAINED.

Dated:        January 30, 2014
              New York, New York


                                                    /s/ Richard K. Eaton
                                                   Richard K. Eaton